Judgment affirmed and Opinion filed July 14, 1994



In The

# Court of Appeals

For The

# First District of Texas

---

## NO. 01-92-00908-CR

---

### WILLIAM KEITH SPEER, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 183rd District Court
Harris County, Texas
Trial Court Cause No. 598,119**

---

## OPINION

Appellant, a juvenile, was certified to stand trial as an adult for murder and capital murder for remuneration. A jury found appellant guilty of capital murder for remuneration, and the trial court assessed punishment at life imprisonment. In 11 points of error, appellant contends that: (1) the evidence was insufficient to show that he committed the murder for remuneration or the promise of remuneration; (2) during voir dire, the prosecutor inaccurately instructed the jury on the law; (3) the trial court erred in denying his motion to quash because the statutory punishment is arbitrary and capricious, in violation of the Texas and United States Constitutions; (4) the trial court never obtained jurisdiction to hear the case; (5) the trial court failed to require the State to elect

a paragraph upon which to proceed; (6) the trial court erred by admitting into evidence certain hearsay statements; (7) the trial court erred by denying relevant portions of his requested jury charge numbers two and three, and all of his requested jury charge four; and (8) the trial court erred by excluding certain expert testimony. We affirm.

In the early morning of January 24, 1991, 16-year-old appellant, carrying his mother's gun, sneaked out of his home and rode with his friend, 19-year-old Franklin Manyoma, to the home of the complainant, Jerry Collins. Appellant entered Collins' bedroom, and shot and killed him as he slept in his bed. Collins was the father of John Collins, also a friend of appellant. At the time of the killing, because John and his father were not getting along, he had moved out of his father's house, and he and Manyoma were living with Cindy Patterson, appellant's aunt, and her three daughters, 17-year-old Christy Barton, 14-year-old Candy Barton, and eight-year-old Kimi Barton. Candy was Manyoma's girlfriend.

About a week before the killing, the complainant and Manyoma had a dispute about a $828 debt that the complainant was attempting to collect from Manyoma. Manyoma told appellant that the complainant had given him until noon on January 24 to pay the money, or complainant would give the police a video tape showing Manyoma, John, and others selling cocaine. Several days before the murder, John, Manyoma, Candy, and appellant drove to the home of their friends, 15-year-old Lee and 20-year-old Victor Garza. Lee said that while appellant was present, Manyoma asked him, Lee, and Victor to kill the complainant for $2500 and a pistol. They both refused, but each day Manyoma continued to ask Lee to do the killing. Appellant was present on some of these occasions. Manyoma finally told Lee that he was going to get appellant to do it.

In his first point of error, appellant contends the evidence was insufficient to show that he murdered the complainant for remuneration or the promise of remuneration, as charged in the indictment. In reviewing the sufficiency of the evidence,

an appellate court must view the evidence in the light most favorable to the verdict to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979). This Court may not sit as a thirteenth juror and disregard or reweigh the evidence. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). If there is evidence that establishes guilt beyond a reasonable doubt, and the trier of fact believes that evidence, we are not in a position to reverse the judgment on sufficiency of the evidence grounds. *Id.*; *Glass v. State*, 761 S.W.2d 806, 807 (Tex. App.--Houston [1st Dist.] 1988, no pet.). The jury, as trier of fact, is the sole judge of the credibility of witnesses, and may believe or disbelieve all or any part of a witness' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986), *cert. denied*, 488 U.S. 872, 109 S.Ct. 190 (1988); *Smith v. State*, 789 S.W.2d 419, 420 (Tex. App.--Houston [1st Dist.] 1990, pet. ref'd). A jury may believe a witness even though his testimony is contradicted. *Sharp*, 707 S.W.2d at 614.

To support his argument, appellant submits affidavits from six jurors (admitted at the hearing on the motion for new trial) relating the jurors' understanding of the evidence at trial to support a "promise of remuneration." The affidavits contain the following statements:

> In my service as a juror in this case, the crucial decision that had to be made was whether or not WILLIAM KEITH SPEER was guilty of Capital Murder or only of the lesser included offense of Murder.
>
> There was no doubt in my mind that WILLIAM KEITH SPEER was guilty of Murder, but to find him guilty of Capital Murder it was necessary for me to find he acted because of "remuneration or the promise of remuneration, namely money".
>
> There was no evidence that WILLIAM KEITH SPEER had received any money prior to his killing JERRY COLLINS so my focus was on the "promise of remuneration" portion.

There was also no evidence that FRANKLIN MANYOMA ever promised WILLIAM KEITH SPEER any money to kill JERRY COLLINS and my verdict of Capital Murder was based on my understanding that WILLIAM KEITH SPEER'S belief that FRANKLIN MANYOMA might give him money <u>because</u> he did the killing was sufficient to satisfy the "promise of remuneration" requirement.

Specifically, I do not believe the evidence showed FRANKLIN MANYOMA ever paid WILLIAM KEITH SPEER to kill JERRY COLLINS nor did FRANKLIN MANYOMA ever promise WILLIAM KEITH SPEER he would pay him if he would kill JERRY COLLINS.

We may not consider these affidavits. Rule 606(b) of the Texas Rules of Criminal Evidence provides that a juror is not competent to testify (or to give affidavit testimony) about "any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify as to any matter relevant to the validity of the verdict or indictment." *See McIntire v. State*, 698 S.W.2d 652, 658 (Tex. Crim. App. 1985) (motion for new trial alleging jury misconduct on matter *outside the record* must be supported by the affidavit of juror in a position to know the facts). Appellant complains about the sufficiency of the evidence as it relates to the indictment and jury instructions. This is a matter shown by the record; we do not consider what the jurors recall about the evidence.

The record reflects that the jury was given the following definition of remuneration:

Remuneration means a pecuniary reward given or received because of some act. The act must be done for the purpose of receiving some benefit. The focus is on the defendant's state of mind and the State is obligated to offer evidence which establishes beyond a reasonable doubt the defendant's intent or state of mind as related to an expectation of remuneration.

The record further reflects that the indictment limited remuneration to "money." Therefore, the State had the burden to offer evidence establishing beyond a reasonable doubt appellant's intent as related to an expectation of money. When considering evidence of remuneration, the Court of Criminal Appeals has consistently held that the "focus is on the actor's state of mind." *Rice v. State*, 805 S.W.2d 432, 434-35 (Tex. Crim. App. 1991); *Beets v. State*, 767 S.W.2d 711, 735 (Tex. Crim. App. 1987); *Duff-Smith v. State*, 685 S.W.2d 26 (Tex. Crim. App. 1985); *McManus v. State*, 591 S.W.2d 505, 513 (Tex. Crim. App. 1979). Appellant argues that the evidence proved that he killed the complainant to please Manyoma, not to receive money.

The most compelling evidence relating to appellant's motive is included in his confession, where he states, "I finally told [Manyoma] that I would do it. I wanted to help out my friend, I did not want him to go to jail, and I knew he would give me money." He also stated at trial and in his confession that after the murder, "[w]hile we were riding back to my house, Franklin told me that he would pay seven or eight thousand dollars. He claimed that he had the money in a bank account but could not get it." Moreover, reasonable inferences could be drawn from the following circumstantial evidence of appellant's state of mind: (1) appellant was present when the job was first offered to Lee and Victor Garza in exchange for money and a pistol; (2) Manyoma told Lee Garza that he was going to pay appellant to kill the complainant; and (3) after the killing, appellant walked up to a group of people, including Manyoma and Lee Garza, patted Manyoma on the back and said, "So when are you going to pay me?" We find this evidence sufficient for a rational trier of fact to have found that appellant killed the complainant for the promise of remuneration, namely money. We overrule point of error one.

In point of error two, appellant asserts the trial court erred by overruling his objection to a particular statement made by the prosecutor during voir dire. Appellant contends the prosecutor misstated the law when she told the venire members that "you

can find someone guilty of capital murder even if you don't have someone expressly promising to our killer they're going to get any money." The prosecutor's entire statement was:

> You must look to the state of mind of the person charged with capital murder and if the reason that they committed an intentional killing was because they expected some sort of financial benefit or gain--and in this particular case we have to show that the expected financial gain was money--then you can find someone guilty of capital murder even if you don't have someone expressly promising to our killer they're going to get any money.

The State does not dispute that there was no evidence that appellant *received* remuneration for killing complainant. Therefore, as in this case, when proof of murder for the *promise of* remuneration is required, "the focus is on the actor's intent or state of mind: Did the actor kill in the expectation of receiving some benefit or compensation. . .?" *Beets*, 767 S.W.2d at 735. "The existence of a 'culpable promisor' is not required." *Id.*

In *McManus*, the Court of Criminal Appeals affirmed a conviction where the defendant murdered the parents of his girlfriend, Paula, based on the defendant's expectation of receiving one-third of Paula's inheritance. 591 S.W.2d at 513. There was no evidence that Paula agreed to pay the defendant. *Id.* The court stated that "the record clearly reflects that appellant expected to share in the proceeds from the estate of the victims and that he acted out of an expectation that he would receive such remuneration." *Id.* The court further stated that:

> appellant could have inferred from Paula's conduct that she agreed to and acquiesced in his request for one-third of the proceeds of the estate. Paula knew that appellant was serious about having her parents murdered, and, according to her own testimony, she listened to appellant discuss these plans frequently. . . . The record is clear that appellant perceived Paula's conduct as an implicit promise of a benefit and that he acted upon that basis.

*Id.* We find no error in the prosecutor's statement that "you can find someone guilty of capital murder even if you don't have someone expressly promising to our killer they're going to get any money." The prosecutor correctly stated the law. We overrule point of error two.

In points of error three and four, appellant contends the trial court erred by overruling his motion to quash because the statutory punishment is arbitrary and capricious, in violation of the Texas and United States Constitutions. Appellant contends that because the statutory punishment, when committed by a juvenile, is limited to life imprisonment, it unconstitutionally limits the sentencer's consideration of any relevant circumstances that could cause it to decline to impose the life punishment.

When reviewing the constitutionality of a sentencing statute, we consider: (1) the gravity of the offense relative to the harshness of the penalty; (2) the sentence compared to that received by others in the same jurisdiction; and (3) the sentence compared to similar sentences in other jurisdictions. *Solem v. Helm*, 463 U.S. 277, 290, 103 S.Ct. 3001, 3010 (1983).

The offense is one for which Texas law provides the death penalty for adult offenders without violation of the state or federal constitutional provisions against cruel and unusual punishment. *Smith v. State*, 683 S.W.2d 393, 409 (Tex. Crim. App. 1984). Oklahoma allows the death penalty as punishment for a similar offense committed by one as young as 16. *Eddings v. Oklahoma*, 455 U.S. 104, 105, 102 S.Ct. 869, 871 (1982). If appellant had been eight months older, he could have been assessed the death penalty. In addition, the mandatory life sentence does not make appellant ineligible for parole under Texas law.

Moreover, the jury heard testimony that appellant was abused by his father, and that he had low self-esteem, allowing others to make important decisions for him. This evidence was mitigating in nature, and the jury was able to consider its effect in

determining whether appellant committed capital murder or murder, in that the evidence tended to show that his motive was not for remuneration but for other reasons.

We further note that the recidivist statute that formerly required the imposition of a life sentence was repeatedly upheld. *See Brooks v. State*, 642 S.W.2d 791 (Tex. Crim. App. 1982); *Wilson v. State*, 633 S.W.2d 952, 959 (Tex. Crim. App. 1982); *Williams v. State*, 605 S.W.2d 596, 600 (Tex. Crim. App. 1980). We overrule points of error three and four.

In point of error five, appellant contends the trial court never obtained jurisdiction to handle the case pursuant to Tex. Fam. Code Ann. § 54.02 (Vernon 1986) because the trial court never assumed jurisdiction. The day after appellant's May 14, 1991, certification hearing, the Honorable Robert B. Baum, judge of the 314th District Court, a juvenile court, signed a certification order that waived jurisdiction, and transferred appellant to the criminal district court. On the same day, the Honorable Jim Barr, judge of the 183rd District Court, signed an order assuming jurisdiction over appellant, directed that the criminal cause be filed and docketed, and ordered the sheriff to take appellant into custody. At the top of Judge Barr's order are the words, "IN THE 183RD DISTRICT COURT OF HARRIS COUNTY, TEXAS." However, beneath his signature below, Judge Barr is identified as "JUDGE, 314TH DISTRICT COURT HARRIS COUNTY, TEXAS." This discrepancy is the basis of appellant's claim that the 183rd District Court never obtained jurisdiction over the cause.

Appellant claims that *Ex parte LeBlanc*, 577 S.W.2d 731 (Tex. Crim. App. 1979), is analogous to the case before us. In *LeBlanc*, the court held that criminal proceedings against the appellant were terminated upon his discharge after an examining trial, where it was determined there was no probable cause that he had committed the alleged offenses. *LeBlanc* is distinguishable from the case before us. *LeBlanc* dealt with the valuable right of an examining trial, i.e., an event that "furnishes another opportunity

-8-

to have the criminal proceedings against the juvenile terminated and the jurisdiction of the juvenile court resumed." *Id*. at 733. In contrast, in the case before us, the order assuming jurisdiction over the cause contained a discrepancy that appears to be no more than a typographical error or editing oversight. The caption of the order identifies the court as the 183rd District Court. We find that the 183rd District Court properly assumed jurisdiction over the cause. We overrule point of error five.

In point of error six, appellant contends the trial court erred in failing to require the State to elect the paragraph upon which it would proceed. Before evidence was presented, the trial court overruled defense counsel's request that the State be required to make an election. Appellant never reurged his motion after the State rested. The indictment reads, in pertinent part, that appellant did:

> intentionally and knowingly cause the death of JERRY COLLINS, hereinafter styled the Complainant, by shooting the Complainant with a deadly weapon, namely, a firearm.

> It is further presented that . . . the Defendant . . . did then and there unlawfully intend to cause serious bodily injury to . . . the Complainant, and did cause the death of the Complainant by intentionally and knowingly committing an act clearly dangerous to human life, namely, by shooting the Complainant with a deadly weapon, namely, a firearm.

> It is further presented that . . . the Defendant . . . did then and there unlawfully, intentionally and knowingly cause the death of . . . the Complainant, by shooting the Complainant with a deadly weapon, namely, a firearm, and the Defendant committed the murder for remuneration and the promise of remuneration, namely, money.

The first two paragraphs allege alternative theories of committing the offense of murder, not two separate offenses. Where there is sufficient evidence to support the submission of two theories of committing a single offense, the State is not required to elect only one theory for submission. *Vasquez v. State*, 665 S.W.2d 484, 486-

87 (Tex. Crim. App. 1984),; *Richardson v. State*, 766 S.W.2d 538, 541 (Tex. App.--Houston [14th Dist.] 1989, pet. ref'd).

The third paragraph alleges the offense of capital murder. Because the State in the first two paragraphs alleged murder, a lesser included offense of capital murder as alleged in the third paragraph, the State was not required to make an election. *Washington v. State*, 771 S.W.2d 537, 546-47 (Tex. Crim. App. 1989). We overrule point of error six.

In point of error seven, appellant complains about the trial court allowing Lee Garza to testify about Manyoma soliciting him and his brother to kill the complainant. Appellant contends the testimony was inadmissible hearsay; the State contends that the testimony is not hearsay under TEX. R. CRIM. EVID. 801(e)(2)(E). Rule 801(e)(2)(E) provides that "a statement is not hearsay if the statement is offered against a party and is a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy."

The complained-of testimony between Garza and the prosecutor follows:

Q: Prior to Mr. Collins being killed, did Franklin Manyoma ever indicate to you whether or not Keith Speer was going to assist in killing Mr. Collins?

A: Yes, ma'am.

Q: What did Franklin Manyoma say about Keith Speer?

A: Well, he told me around, I would say, around three days before --

Defense Counsel: Judge, I object to this not having anything to do with the furtherance or in the course of and object to it as hearsay.

(UNRECORDED BENCH CONFERENCE)

Court: That will be overruled.

Q: What did Franklin Manyoma tell you about Keith Speer?

A: What do you mean? What did he tell me about Keith Speer?

Q: The question I asked you right before we approached the bench, I believe I asked you whether or not Franklin Manyoma had ever indicated to you whether or not Keith Speer was going to do anything in reference to killing Mr. Collins; do you remember that?

A: Yes, ma'am.

Q: What was your response?

A: He had told me like three days before the murder that Keith was going to do it.

Q: Did he tell you how much he was going to do it for and why he was going to do it?

Defense Counsel: Object to this also, Judge.

Court: Overruled. Same objection lodged.

Defense Counsel: Yes, your Honor.

Court: Same ruling.

A: He didn't say exactly. He said he was going to pay Keith a few hundred dollars. Exactly I don't know what to tell you. He just told me a few hundred dollars.

Q: That was before Mr. Collins was killed?

A: Yes, ma'am.

Appellant concedes the statements were made *during the course* of the conspiracy, but contends they were not made *in the furtherance* of the conspiracy because they neither required nor suggested any action on the part of either party or any other person, nor did they provide information to Lee that was necessary for him to act in any way in furtherance of the conspiracy.

The "in furtherance" of the conspiracy requirement is a separate requirement that must be met in addition to the requirement that the statement be made "during the conspiracy." *Meador v. State*, 812 S.W.2d 330, 333 (Tex. Crim. App. 1991).

-11-

"Some substance must be given to the rule's requirement, not only that the statement was made 'in the course' of the conspiracy, but also that it was made 'in furtherance' thereof." *Williams v. State*, 790 S.W.2d 643, 645 (Tex. Crim. App. 1990).

In *Deeb v. State*, 815 S.W.2d 692, 697 (Tex. Crim. App. 1991), the court reviewed some of its decisions on whether certain statements met the "in furtherance" of the conspiracy requirement.

> In *Helms v. State*, 493 S.W.2d 227, 230 (Tex. Crim. App. 1973), the co-conspirator's statement was made to facilitate the disposal of the murder weapon. In *Rodriguez v. State*, 552 S.W.2d 451, 454, the co-conspirator's statements were made to further the negotiations for the purchase of the illegal drugs. In *Denney v. State*, 558 S.W.2d 467, 469, the co-conspirator's statements were made for the purpose of disposing of the fruits of the crime and evidence that the crime had been committed. In contrast to these examples, in *Ward v. State*, 657 S.W.2d 133, 136-137, the co-conspirator's statements were made in response to questioning after the murder had been completed and the defendant was in custody.

Manyoma's statements, although made before the murder, were not made in furtherance of the conspiracy. We find nothing in Manyoma's statements to Lee Garza that advanced the cause of the conspiracy nor served in any way to facilitate the conspiracy. *See Meador*, 812 S.W.2d at 334. Moreover, Manyoma's statements to Lee Garza did not "serve to further the conspiracy to murder complainant for remuneration." *See Deeb*, 815 S.W.2d at 698. The statements appear to be more in the nature of admissions or declarations made during a mere conversation between conspirators, and their admission was error.

Accordingly, the judgment must be reversed unless we determine beyond a reasonable doubt that the error made no contribution to the conviction. Tex. R. App. P. 81(b)(2). To make this determination, we examine the other evidence showing that a conspiracy existed for appellant to kill complainant for remuneration. Lee and Victor Garza testified that when Manyoma asked them to do the killing for money and a pistol,

-12-

appellant was present. Appellant, both in his confession and at trial, admitted to being present. Moreover, in his confession appellant stated, "I knew he would give me money." He further stated that after the murder, "[w]hile we were riding back to my house, Franklin told me that he would pay seven or eight thousand dollars. He claimed that he had the money in a bank account but could not get it." After the killing, appellant walked up to a group of people, including Manyoma and Lee Garza, patted Manyoma on the back and said, "So when are you going to pay me?" Based on this evidence, we find beyond a reasonable doubt that the error made no contribution to the conviction. We overrule point of error seven.

In points of error eight and nine, appellant contends the trial court erred in denying relevant portions of his requested jury charges two and three, relating to Manyoma's statements made outside the presence of appellant. The trial court refused the italicized portions of the following jury instructions:

> In order for you to take into consideration such statements, if any, as any evidence against the defendant, you must believe from all the evidence beyond a reasonable doubt that the defendant, William Keith Speer, had agreed with Franklin Manyoma to commit the offense alleged in the indictment and that they were acting together in the commission of such offense. *Further, the statements made must have been made in furtherance of the conspiracy or in the course of completing the conspiracy.*
>
> . . . .
>
> Unless you do believe beyond a reasonable doubt that there was such agreement and that the defendant was a party thereto, or if you have a reasonable doubt thereof, you will disregard such statements, if any, of Franklin Manyoma as any evidence against the defendant. *Additionally, should you find that there was such agreement and that the defendant was a party thereto, in your consideration of the statements you are instructed they were not offered for the truth of the matter asserted but merely to show the existence of a conspiracy.*

-13-

There is no error in excluding the requested instruction if "defendant's own acts and declarations sufficiently connected him with the offense to authorize a jury to convict him, and because no declarations or acts of his co-principals connected him." *Lewis v. State*, 237 S.W.2d 293, 301 (Tex. Crim. App. 1951). In *Casillas v. State*, 733 S.W.2d 158 (Tex. Crim. App. 1986), the court followed its reasoning in *Lewis*. Although the second part of the *Lewis* holding (that no declarations or acts of his co-principals connected defendant) is not valid in the case before us, in *Casillas*, the court emphasized and relied upon the first part of its holding in *Lewis*, defendant's acts and declarations, and not on the second part, the co-conspirators' acts and declarations connecting defendant. The *Casillas* court emphasized that the appellants' own acts and declarations showed that they were sufficiently connected with the commission of the felony to authorize a jury to convict him. *Id.* at 167. The court also noted that holding that there was no error in the jury instructions comported with the principle that, where evidence which otherwise would be inadmissible, is proven by some other testimony, no reversible error is shown. *Id.*

Appellant confessed to the murder of the complainant. He also confessed that one of the reasons he killed the complainant was because "I knew [Manyoma] would give me money." Appellant's own acts and declarations showed that he was sufficiently connected with the commission of the felony to authorize a jury to convict him; therefore, there was no error in refusing the requested instructions. We overrule points of error eight and nine.

In point of error 10, appellant contends that the trial court refused to permit Dr. Quijano's testimony, offered pursuant to TEX. R. CRIM. EVID. 702. Rule 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an

expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

Appellant again relies on six juror affidavits, each of which state that hearing testimony about Dr. Quijano's diagnosis of appellant's "dependent personality disorder" would have assisted them in determining whether appellant killed the complainant for the promise of remuneration or out of a desire to please Manyoma. The decision whether to allow a witness to testify as an expert is committed to the sound discretion of the trial court. *Duckett v. State*, 797 S.W.2d 906, 910 (Tex. Crim. App. 1990). In reviewing the trial court's decision to exclude the testimony, the jurors' assessment of the importance of Dr. Quijano's testimony is irrelevant.

Appellant argues that the trial court abused its discretion because Dr. Quijano had evidence to which lay jurors would not routinely be privy. In support of his argument, he cites *Duckett*, where the defendant was convicted of indecency with a child. 797 S.W.2d at 920. In *Duckett*, the court held that the trial court did not abuse its discretion by allowing expert testimony that provided the jury with information concerning child sexual abuse syndrome. *Id.* In its analysis, the court stated:

> The test is not whether opinion testimony embraces an ultimate fact in the case, for that is the expected or desired result of specialized testimony. The test, restated, is whether the expert's testimony, if believed, will assist the untrained layman trier of fact to understand the evidence or determine a fact in issue . . . and whether it is otherwise admissible under general rules of relevant admissibility.
>
> . . . .
>
> Where specialized knowledge will assist the jury to understand the evidence or will assist them to determine a fact in issue, an expert may be allowed to provide the jury with the benefit of that knowledge. Two themes are prevalent within the language of the rule. First, the jury must not be qualified to intelligently and to the best possible degree determine the particular issue without benefit of the expert witness' specialized knowledge. Second, the clear meaning of the rule

must be observed. . . . The use of expert testimony must be limited to situations in which the expert's knowledge and experience on a relevant issue are beyond that of an average juror.

*Id.* (citations omitted).

A review of Dr. Quijano's testimony reveals that even though his insight into appellant's dependent personality might have been of some benefit to the jury, the trial court could have properly concluded that it was not the type of testimony found outside the range of a layperson's knowledge. *See Pierce v. State*, 777 S.W.2d 399, 414 (Tex. Crim. App. 1989) (expert testimony not allowed to assist jury on suggestiveness of a lineup). Dr. Quijano would have testified that: (1) appellant had a dependent personality disorder; (2) the disorder was characterized by a very dependent life style; (3) persons with this disorder rely on the support and approval of others, such that they allow others to make important decisions for them, and engage in menial and demeaning tasks to maintain relationships with them; (4) appellant's willingness to do things for others was a result of an inner need to please; and (5) appellant's dependent personality disorder could have been a contributing factor to appellant's decision to kill complainant.

We find that the trial court did not abuse its discretion when it concluded that Dr. Quijano's testimony was not the type of testimony found outside the range of a layperson's knowledge. It is not uncommon for teenagers to be insecure, easily influenced by others, and to act against their better judgment by following those doing the influencing. In addition, the fact that appellant was strongly influenced by Manyoma and others was established at trial. The trial court allowed two nonexpert witnesses to testify about their perceptions of appellant's lack of self-esteem, his need for others' approval, and his engaging in menial tasks to please others. Moreover, Dr. Quijano's testimony that appellant could have been motivated by a dependence on Manyoma would not necessarily exclude the possibility that he could have also been motivated by money. Appellant's

confession reveals three motives: first, to help out Manyoma; second, to prevent Manyoma from going to jail; and third, to receive money. We overrule point of error 10.

In his final point of error, appellant contends the trial court erred by admitting into evidence a tape and transcript of a conversation between appellant and Manyoma without a limiting jury instruction.

Manyoma was the initial suspect in the murder of the complainant. At the request of police officers investigating the murder, appellant voluntarily agreed to wear a "wire" to tape a conversation with Manyoma. At trial, the State offered into evidence a tape and a transcript of the covertly recorded conversation between appellant and Manyoma. Appellant objected to the evidence as hearsay; the State responded that the evidence was being offered not for its truth, but simply to show that the conversation occurred. The court allowed the tape and transcript into evidence. Appellant requested the following limiting instruction, which was refused:

> There has been admitted in evidence testimony relating to certain taped conversations between the Defendant and Franklin Manyoma. This evidence was not admitted for the purpose of establishing the truth of the matter contained in said conversations but to assist you, if it does, in determining [to be filled in because counsel did not know the reason for admitting the tape].

The recorded conversation shows appellant in the position of trying to elicit incriminating statements from Manyoma without alerting police to appellant's own role in the murder. Therefore, much of the conversation is nonsensical. Initially, during the conversation, Manyoma is obviously confused about appellant's persistence in questioning him about the details of the murder that appellant had committed. Finally, however, Manyoma appears to suspect that appellant is attempting to set him up as the trigger man. Manyoma then begins questioning appellant about appellant's own role in the murder, which appellant denies. Although both appellant and Manyoma denied any participation in the murder during the conversation, the context indicates that they both

knew details of the murder that they attempted to blame either on each other or on third parties.

Texas Rule of Criminal Evidence 105(a) states:

> When evidence which is admissible . . . for one purpose but not admissible . . . for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly; but, in the absence of such request the court's action in admitting such evidence without limitation shall not be a ground for complaint on appeal.

*See McIntosh v. State*, 855 S.W.2d 753, 768 (Tex. App.--Dallas 1993, pet. ref'd).

The party opposing the admission of the evidence has the burden of requesting the correct limiting instruction at the trial. *Plante v. State*, 692 S.W.2d 487, 493 (Tex. Crim. App. 1985). Appellant preserved error for appeal by objecting to the admission of the tape and transcript and by requesting the limiting instruction.

Where evidence is offered for a specific purpose, the party opposing its admission is entitled to a limiting instruction informing the jury of the limited purpose of the evidence. *Porter v. State*, 709 S.W.2d 213, 215 (Tex. Crim. App. 1986). Here, the evidence was offered not for its truth, but for the purpose of proving that the conversation between appellant and Manyoma actually occurred. Because of the limited use of the evidence, appellant was entitled to a limiting instruction that he requested and the trial court refused. *See* Tex. R. Crim. Evid. 105(a). The trial court erred when it did not instruct the jury on the limited purpose for which the evidence was admitted. *See Porter* 709 S.W.2d at 216.

Even though the trial court erred in denying appellant's requested jury instruction, the judgment will not be reversed if we determine beyond a reasonable doubt that the error made no contribution to the conviction. Tex. R. App. P. 81(b)(2). To make this determination, we examine the record for other evidence showing that a conspiracy existed for appellant to kill the complainant for remuneration.

The record shows that Lee and Victor Garza testified that when Manyoma asked them to do the killing for money and a pistol, appellant was present. Appellant, both in his confession and at trial, admitted to being present. Moreover, in his confession appellant stated, "I knew he would give me money." He further stated in his confession that after the killing, "[w]hile we were riding back to my house, Franklin told me that he would pay seven or eight thousand dollars. He claimed that he had the money in a bank account but could not get it." After the killing, appellant walked up to a group of people, including Manyoma and Lee Garza, patted Manyoma on the back and said, "So when are you going to pay me?" Based on this evidence, we find beyond a reasonable doubt that the error made no contribution to the conviction. We overrule point of error 11.

We affirm the trial court's judgment.

/s/ Lee Duggan, Jr.
Lee Duggan, Jr.
Justice

Justices Mirabal and Wilson also sitting.

Publish. TEX. R. APP. P. 90.

Judgment rendered and opinion delivered July 14, 1994.
True Copy Attest:

Margie Thompson
Clerk of Court