Opinion issued January 27, 2005



     
 
 

In The
Court of Appeals
For The
First District of Texas




NO. 01-03-0066-CR




PENNY BAKER, Appellant

V.

THE STATE OF TEXAS, Appellee


 
On Appeal from County Criminal Court at Law No. 2 
Harris County, Texas
Trial Court Cause No. 1100353




O P I N I O N
          Appellant, Penny Baker, pleaded not guilty to the misdemeanor offense of
driving while intoxicated (DWI). The jury found him guilty. In accordance with an
agreed recommendation between the State and appellant, the trial court assessed a
suspended punishment of 180 days in jail, and a fine of $1,000, and placed appellant
on community supervision. See Tex. Pen. Code Ann. § 49.04 (Vernon 2003). In
four points of error, appellant contends that the trial court erred by (1) admitting into
evidence what appellant contends is effectively a copy of a page of an offense report
and declining to give a limiting instruction concerning the exhibit, and (2) overruling
appellant’s objection and overruling appellant’s motion for a mistrial on the grounds
that the State allegedly argued matters outside the record. Appellant also contends,
in his fifth point of error, that the evidence is factually insufficient to sustain his
conviction. We affirm. 
Background
          At approximately 2:30 a.m. on February 8, 2002, Houston Police Department
(HPD) Officer Green stopped appellant on Westheimer Road in Houston for driving
61 miles per hour in a 35 mile per hour zone. Officer Green asked appellant for his
driver’s license and proof of insurance. Appellant produced his insurance card, but
was unable to locate his driver’s license. 
          Officer Green noticed that appellant had a strong odor of alcohol on his breath
and “fair to slurred” speech. Upon questioning, appellant revealed that he had
consumed three beers in four hours and that he had drunk his last beer 30 minutes
before he was stopped. Officer Green asked appellant if he had any medical
problems. Appellant first said he had no medical problems, but later indicated he was
taking medicine for high blood pressure. 
          Officer Green conducted the Horizontal Gaze Nystagmus (HGN), Rhomberg,
walk-and-turn, and one-leg-stand field-sobriety tests on appellant. Appellant’s
performance on the field-sobriety tests was recorded on videotape by Officer Green,
who had videotape equipment in his police car. Each of the field-sobriety tests
indicated that appellant was intoxicated, and Officer Green formed the opinion that
appellant had lost the normal use of his mental and physical facilities due to the
introduction of alcohol into his body.
          After appellant’s arrest, Officer Green conducted an inventory search of
appellant’s car and found appellant’s wallet and driver’s license in the “driver’s
compartment area.” While at the police station, appellant refused to submit a breath
specimen into an intoxilyzer instrument. Officer Green did not offer appellant the
opportunity to perform the field-sobriety tests at the station because he believed they
were not necessary, due to the earlier recording of appellant’s performance on the
field-sobriety tests at the scene. 
          At trial, appellant challenged Officer Green’s assertions that he was intoxicated
by introducing medical records showing that appellant’s right ankle had been
fractured in 1989 to explain why appellant had difficulty performing the field-sobriety tests. Appellant’s defense consisted of testimony from friends and
coworkers who were with him during the night that he was arrested and who testified
that he was not intoxicated.Factual Sufficiency
          In his third point of error, appellant contends that the evidence is factually
insufficient to sustain the jury’s verdict. When conducting a factual-sufficiency
review, we view all the evidence in a neutral light and will set the verdict aside only
if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or
the contrary evidence is so strong that the standard of proof beyond a reasonable
doubt could not have been met. Escamilla v. State, 143 S.W.3d 814, 817 (Tex. Crim.
App. 2004). In conducting this review, we must discuss evidence that appellant
contends most undermines the jury’s verdict. See Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003). Unless the available record clearly reveals that a different
result is appropriate, an appellate court conducting a factual sufficiency review must
defer to the jury’s determination concerning what weight to give conflicting
testimony because resolution often turns on evaluation of credibility and demeanor. 
Johnson v. State, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000). 
Testimony by Officer Green
          Appellant contends that the evidence is factually insufficient because Officer
Green’s own testimony established that (1) nervousness could account for an
individual’s mental and physical mistakes, (2) an odor of alcohol would remain on
a person who had consumed three beers in over six hours, (3) it would have been
important to know that appellant had a preexisting ankle injury that weakened his
right ankle and affected his ability to perform field-sobriety tests, (4) appellant
performed the counting test perfectly twice and performed the heel-to-toe walk
correctly, (5) many people speed on Westheimer Road, (6) appellant did not weave
while driving and complied with the officer’s request to pull over, (7) no medical
evidence equated an inability to correctly estimate 30 seconds, within a margin of
error of five seconds, with a loss of normal use of mental or physical faculties, (8)
very few people can hold up a leg for 30 seconds, (9) the officer could not say
whether appellant’s performance on the field-sobriety tests was “him being normal
or him being intoxicated,” (10) the officer was not familiar with appellant’s normal
mental and physical faculties, and (11) in contravention of general practice, no
station-house video of appellant was made.
          Although appellant’s nervousness, the odor of alcohol, the effect of his
preexisting ankle injury on his performance of the field-sobriety tests,


 and his
performing parts of the field-sobriety tests properly constitute evidence that could be
consistent with sobriety, it was within the province of the jury to reconcile these
discrepancies, to the extent that they conflicted with Officer’s Green’s testimony, in
determining what weight to give his testimony that appellant was intoxicated. See 
id.; see also Speer. v. State, 890 S.W.2d 87, 90 (Tex. App.—Houston [1st Dist.] 1994,
pet. ref’d) (stating that jury is free to believe or disbelieve all or any part of a
witness’s testimony). Concerning appellant’s driving characteristics—his speeding,
not weaving, and pulling over as requested, as Officer Green explained, these neither
prove nor disprove that an individual is intoxicated. As the factfinder, the jury was
likewise free to consider these circumstances in evaluating whether appellant was
intoxicated. See Johnson, 23 S.W.3d at 8; Speer, 890 S.W.2d at 90.
          Appellant has misstated Officer Green’s testimony in asserting that the officer
acknowledged that no medical evidence establishes a correlation between
underestimating 30 seconds and a loss of normal use of mental or physical faculties. 
The record shows that Officer Green merely acknowledged that there was “no
medical article” on the subject; Officer Green never stated that there was no medical
evidence. The record is unclear concerning Officer Green’s response to the question
asking whether very few people can hold up a leg for 30 seconds. In the context of
the record, however, it appears that the officer’s testimony focused on difficulties that
intoxicated people, rather than sober people, encounter in attempting to hold up a foot
for 30 seconds.


 Regardless, we defer to the jury, which was in the best position to
judge the officer’s credibility and demeanor, and its resolution of any inconsistencies
in the testimony concerning appellant’s performance on the field-sobriety tests in
deciding whether appellant was intoxicated. See Johnson, 23 S.W.3d at 8; Speer, 890
S.W.2d at 90.
           The record reflects that, although Officer Green agreed that he did not know
whether “it was him being normal or him being intoxicated,” because he had no prior
contact with appellant, the officer refused to go so far as to agree that appellant could
have been either “intoxicated” or “normal.”


 No law, however, requires that an
officer have prior contact with a defendant. Prior knowledge of the defendant’s
normal state is not a prerequisite to testimony by an officer that he believed that the
defendant was intoxicated. See Railsback v. State, 95 S.W.3d 473, 484 (Tex.
App.—Houston [1st Dist.] 2002, pet. ref’d); see also Massie v. State, 744 S.W.2d
314, 316 (Tex. App.—Dallas 1988, pet. ref’d) (holding that, if evidence exists “that
appellant could not use his faculties on the occasion in question, in the manner in
which the normal non-intoxicated person would be able to use his faculties, the
evidence is sufficient to convict . . . .”). 
          Finally, the question whether station-house videotapes of a defendant’s
performance of field-sobriety tests at the police station are customarily made, or not
made, is also an issue properly left to the jury to assess in determining both Officer
Green’s credibility as a witness and the weight to give his testimony. See Johnson,
23 S.W.3d at 8. 
Testimony by Appellant’s Witnesses
          Appellant also contends that the evidence is factually insufficient to sustain his
conviction because he presented testimony that (1) he drove his car without any
problems, (2) his friend would not have allowed him to drive if he had been
intoxicated, (3) he did not slur his speech, (4) he performed the field-sobriety tests in
a manner that was normal for him, (5) he was not intoxicated, and (6) he appeared
nervous, but not intoxicated, on the videotape. 
          The jury was free to accept the testimony presented by the defense witnesses
or to reject it, and the jury chose the latter. See Johnson, 23 S.W.3d at 8; Cain v.
State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Because this case is based
exclusively on whether Officer Green or appellant’s witnesses were more credible,
which testimony was more persuasive, and what weight to give conflicting versions
of vital facts, we cannot and should not circumvent the jury’s finding. See Johnson,
23 S.W.3d at 8; Cain, 958 S.W.2d at 407. 
Videotaped Evidence
           Appellant further contends that the videotape taken at the scene does not show
that he (1) slurred his speech, (2) swayed during the tests, (3) had any trouble
walking, and (4) performed the field-sobriety tests normally, except for starting one
test prematurely, and using his hands “a bit” during the one-leg-stand test. The jury
viewed the videotape. Because it was a videotape only, with no audio, the tape does
not demonstrate whether appellant’s speech was slurred. No tape recording captured
appellant’s speech that night. What weight to give to the videotape and to Officer
Green’s descriptions of appellant’s performance of the field-sobriety tests that
appellant performed on the videotape were all matters properly left for the jurors’
resolution based on their evaluation of the credibility of the testimony. See Johnson,
23 S.W.3d at 8; Cain, 958 S.W.2d at 407. 
Evidence of Intoxication
          Officer Green testified that, in his opinion, based on appellant’s performance
on the field-sobriety tests, appellant was intoxicated by the introduction of alcohol
into his body. Officer Green found six out of six possible clues on the horizontal
gaze nystagmus (HGN) field-sobriety test administered to appellant at the scene. For
the Rhomberg field-sobriety test, appellant estimated 30 seconds as 19 seconds and
exhibited a one-inch, front-to-back, sway that was outside the normal range for the
test.


 During his performance of the one-leg-stand field-sobriety test, appellant stood
on his left foot and raised his right foot. Appellant had three of the four possible
clues for intoxication by swaying, using arms for balance, and hopping. He did not,
however, exhibit the fourth clue by dropping the raised foot.


 
          Appellant also performed the walk-and-turn field-sobriety test. Of eight
possible clues for intoxication on the walk-and-turn test, appellant had four clues. He
began too soon, used his arms for balance, made an improper turn, and, at the turn,
“kind of staggered” off the line.


 
          Having reviewed all the evidence in a neutral light and in accordance with
appellant’s challenges, we cannot say either that the evidence supporting the jury’s
finding appellant guilty is so weak that the verdict is clearly wrong and manifestly
unjust, or that appellant’s contrary evidence is so strong that the standard of proof,
beyond a reasonable doubt, could not have been met. See Escamilla v. State, 143
S.W.3d at 817. We hold that the evidence was factually sufficient to support
appellant’s conviction for DWI.
          We overrule appellant’s third point of error. 
Offense Report Admitted as Demonstrative Evidence
          In his first point of error, appellant contends that the trial court erred by
admitting, as State’s Exhibit four, a large chart that approximated a page of an
offense-report form, as demonstrative evidence. When offered as demonstrative
evidence, the chart had preprinted categories on it, on which entries were to be
placed, but there were no entries on it. 
          Pursuant to our abatement of this appeal, the trial court provided a copy of
State’s Exhibit four for the record on appeal. Exhibit four was entitled, “Evidence of
Intoxication.” The top third of the page began with title, “Observations Regarding
Defendant.” Under this section, the form had blanks for “Clothing Condition”:
“Mussed, Orderly, Soiled, Disorderly.” An empty oval appeared before each of the
four words describing the clothing condition. Next to that section was “Type/Color”
of “Hat/Cap,” “Jacket/Coat,” “Shirt/Dress,” and “Pants/Skirt,” and blank lines after
each of the topics for information to be filled in. The form then had the following
words listed with a blank line next to the words: “Breath, Walking, Balance,
Attitude, Turning, Speech.” Below that section, another section called for the
following information by providing a blank line next to the subject as follows:
“Suspects [sic] Medical Condition,” “Suspect Taking Medication? Yes/No”; “If Yes,
What?”; “Suspect Admits to Drinking?” “Yes/No How Much?”; “Type (Brand &
Size)”; “Time Took 1st Drink”; “Time Took Last Drink”; “When Ate Last”; “Ate
What?”; and “Suspect’s Statements.”
          The top middle section of the chart was entitled, “Driving Observations,” and
the following information was listed in that section: “Liquor Found in Vehicle Yes
No”; “Other Passengers in Vehicle Yes/No (Adult____ Children____)”; “Road
Type”; “Weather”; “Traffic Condition”; “Driving Manner Speeding Yes No”; “How
Fast”; “Weaving Yes No”; and “Ran Stop Sign/Red Light Yes No.” Ovals appeared
before each of the “Yes” and “No” choices, and the other areas had blank lines next
to the words.
          The State offered Exhibit four as “demonstrative evidence purely for the jury
just to—for visual aid so they understand what exactly the police officer is looking
for when he’s going through the steps about intoxication.” Appellant’s trial counsel
objected that the State would be effectively offering an offense report into evidence
if the State intended to have the officer testify to the information on the form and then
add information to the form as the officer testified before the jury. The trial court
admitted the exhibit as “demonstrative evidence only.”
          As Officer Green testified, the prosecutor filled in the blanks under the
“observation section” on the chart without any objection from appellant’s attorney to
the written entries’ being added to the exhibit.


 The oval next to “orderly” for the
clothing condition was thus darkened. The word “white” was written on the blank
line next to shirt/dress,” and “tan” was written on the blank line next to “pants/skirt.” 
As Officer Green continued to respond to the prosecutor’s questions, information was
added to the chart to show that no liquor was found in the vehicle; one adult was
found in the vehicle; the road was concrete; and the weather was cool. The oval next
to “yes” was filled in to show that appellant was speeding, but the “no” ovals were
filled in to show that appellant was not weaving and did not run a stop sign. In
addition to showing that appellant had a strong odor of an alcoholic beverage on his
breath, the chart also displayed a description of appellant’s walk-and-turn as
“unsteady,” a description of his balance as “poor,” a description of his attitude as
“fair,” and a description of his speech as “fair/slurred.” The chart showed that
appellant was not taking medication, that the space “medical condition” was left
blank, and that appellant admitted that he had consumed three beers, with his first
beer at 8 p.m. and his last beer 30 minutes before he was stopped by Officer Green. 
Under the section, “Suspect’s Statements,” the officer wrote that appellant later stated
that he was taking high blood pressure medicine. There is also a notation next to the
blank for when appellant had last eaten, but the notation is illegible.
          The record reflects that the chart, with its entries added as Officer Green
testified before the jury, was never admitted into evidence for any purpose other than
demonstrative evidence. The chart was never offered or admitted into evidence for
all purposes and was admitted as “demonstrative evidence only” before the prosecutor
added entries as the officer testified. Once the blanks in the chart were filled out,
appellant’s trial counsel represented to the court that the chart before the jury was an
“exact duplicate” of page two of Officer Green’s offense report “through the
observation section.” When appellant’s trial counsel offered Officer Green’s offense
report into the record for “appellate purposes,” the trial court ordered the offense
report included in the appellate record. As supplemented following abatement, the
record reflects that the trial court was of the opinion that all of that information on the
chart exhibited before the jury was the same information contained in the
corresponding section of the police report. 
          We review trial-court rulings admitting evidence under an abuse of discretion
standard. Erdman v. State, 861 S.W.2d 890, 893 (Tex. Crim. App. 1993). Abuse of
discretion occurs when a decision by the trial court is “so clearly wrong as to lie
outside the zone within which reasonable persons might disagree.” Cantu v. State,
842 S.W.2d 667, 682 (Tex. Crim. App. 1992). 
          Public records and reports, in any form, of public offices or agencies setting
forth matters observed pursuant to a duty imposed by law as to which matters there
was a duty to report are not hearsay, even if the declarant is available as a witness. 
Tex. R. Evid. 803(8)(B). An exception controls criminal cases, however, in which
records and reports concerning matters observed by police officers and other law
enforcement personnel are inadmissible hearsay. See id.; Cole v. State, 839 S.W.2d
798, 804-07 & n.8 (Tex. Crim. App. 1990) (op. on reh’g) (holding that full-time
forensic chemists employed by Texas Department of Public Safety were law-enforcement personnel whose reports were not admissible under either the public-record hearsay exception, rule 803(8)(B), or the business-record hearsay exception,
rule 803(6)); Bermen v. State, 798 S.W.2d 8, 12 (Tex. App.—Houston [1st Dist.]
1990, pet. dism’d) (holding that records referring to defendant as escaped prisoner
and escape risk were not admissible because exception for public records, rule
803(8)(B), specifically excluded them as records of law enforcement personnel;
further holding that specific exclusion controlled over business-record hearsay
exception, rule 803(6)).
          Accordingly, had the State attempted to offer Officer Green’s actual report into
evidence to prove that the observations contained in it were true, the report would
properly have been excluded as inadmissible hearsay under rule 803(8)(B), given that
Officer Green is a law-enforcement officer and that the report he prepared contains
his observations. See Tex. R. Evid. 803(8)(B); see also Tex. R. Evid. 801(d)
(defining “hearsay” as “a statement, other than one made by the declarant while
testifying at the trial, that is offered in evidence to prove the truth of the matter
asserted in the statement”). In keeping with rule 803(8)(B)’s prohibition, the officer’s
actual offense report here was not admitted into evidence for any purpose, and
appellant does not complain that the actual offense report was erroneously admitted. 
          Rather, appellant contends that, once completed and filled in as a result of
Officer Green’s testimony, the contents of the chart approximated the contents of the
inadmissible police report. Accordingly, appellant argues, the trial court erred by
admitting the blank chart, which had the same categories as the offense report, as
demonstrative evidence, because the completed chart essentially recreated the
officer’s offense report before the jury as he testified and admitting the chart as
demonstrative evidence allowed the State to circumvent the hearsay prohibition.
          Appellant’s issue presents an interesting question concerning how a police
officer may testify. Although a law-enforcement officer’s report is inadmissible
under rule 803(8)(B), well-settled precedent interpreting rule 611 of the Rules of
Evidence recognizes that the officer may refer to his report to refresh his memory and
may then testify in open court from his refreshed memory. See McCoy v. State, 877
S.W.2d 844, 845 (Tex. App.—Eastland 1994, no pet.). It is not unreasonable,
therefore, to anticipate that a police officer will refer to the offense report during trial
to refresh his memory of the events and that the officer will testify consistently with
his police report. Thus, to a large extent and in most instances, the officer’s
testimony will likely be similar to the contents of his offense report. An officer’s
testimony is not inadmissible merely because his testimony is identical to the contents
of his offense report. Johnson v. State, 846 S.W.2d 373, 376 (Tex. App—Houston
[14th Dist.] 1992), rev’d on other grounds, 853 S.W.2d 574 (Tex. Crim. App. 1993)
(noting that officer referred to, but did not read from, offense report not in evidence
when stating that admitted photocopy of $10 bill was identical to $10 bill referred to
in offense report). 
          As initially offered by the State, the chart falls under the category of
demonstrative evidence used as a visual aid or illustration. See 1 Steven Goode et
al., Guide to the Texas Rules of Evidence § 401.5 at 127 (3d ed. 2002) (Goode). 
The trial court’s discretion to permit the use of visual aids, charts, and diagrams
during trial is well-established. See Markey v. State, 996 S.W.2d 226, 231 (Tex.
App.—Houston [14th Dist.] 1999, no pet.) (listing numerous cases). To be
admissible, objects offered as demonstrative evidence must meet the tests of
relevancy and materiality, as well as the limitations imposed by rule 403. See Goode
§ 401.5 at 128. In contrast to mere demonstrative evidence, which is admitted solely
for purposes of illustration, the trial court may, in the exercise of its discretion, admit
into evidence for all purposes either “real” evidence, for example, the actual objects
involved in a case, or “reproduced real” evidence, for example, photographs, maps,
or drawings that approximate the actual objects or places involved in a case. See id.;
Markey, 996 S.W.2d at 231 (holding that trial court erred, but harmlessly, by
admitting into evidence, for all purposes, chart summarizing officer’s testimony).
          Appellant objected to the chart when it was first offered and had not yet been
filled in on the grounds that it was hearsay. Nothing in the hearsay provisions of the
rules of evidence prohibited the State from introducing the chart as demonstrative
evidence. As noted above, “hearsay” is a statement, other than one made by the
declarant while testifying at the trial, offered in evidence to prove the truth of the
matter asserted in the statement. See Tex. R. Evid. 801(d) (emphasis added). When
the prosecutor offered the chart as demonstrative evidence, it contained no assertions
of any kind because the chart consisted of mere blanks and ovals to which
information was yet to be added. The chart made no assertions until the officer
responded to questions by the prosecutor. As the officer responded, the prosecutor
inserted the responses into the blanks and ovals. The information on the chart was
thus tendered to the jury in open court as the officer testified. By definition, the
information offered by the officer as he testified was not an “out of court statement”
offered to prove the truth of the matter asserted. See id.
          Moreover, because nothing in the record shows that the chart was an actual
copy of the offense report itself—as opposed to a chart that contained the same
information—the chart was not inadmissible under rule 803(8)(B) of the Rules of
Evidence. See Tex. R. Evid. 803(8)(B).
          We cannot conclude that the chart showing information similar to that
contained in a police report is inadmissible as demonstrative evidence solely because
the officer used the same words that he used in his offense report to describe
appellant’s actions. Under the circumstances presented here, therefore, we conclude
and hold that the demonstrative use of the chart was not inadmissible hearsay.


 
          We overrule appellant’s first point of error.            
Limiting Instruction
          In his second point of error, appellant contends that he was entitled to a
limiting instruction cautioning jurors that State’s Exhibit four, the chart addressed
above, was admitted solely for demonstrative purposes. Rule of Evidence 105(a)
states that, “when evidence which is admissible as to one party or for one purpose but
not admissible as to another party or for another purpose is admitted, the court, upon
request, shall restrict the evidence to its proper scope and instruct the jury
accordingly.” Limiting instructions ensure that the jury does not rely on admitted
evidence for an impermissible purpose. Lewis v. State, 815 S.W.2d 560, 566 (Tex.
Crim. App. 1991). The court need not provide a limiting instruction when the
evidence can be considered on any relevant issue in the case. Lane v. State, 822
S.W.2d 35, 40 (Tex. Crim. App. 1991).
          We conclude that the trial court erred by not instructing the jury that the chart
on which the prosecutor recorded Officer Green’s responses was admitted into
evidence for demonstrative evidence only. The chart was used as a visual aid to assist
the jury while the officer testified, but it was not admitted into evidence for the jury’s
use while they deliberated. See Markey, 996 S.W.2d at 231. Accordingly, the trial
should have instructed the jurors that the chart had a purpose limited to assisting
them, if it did, in understanding the officer’s testimony as he testified in court. 
          To warrant reversal of the judgment of the trial court, error must affect the
substantial rights of the parties. Tex. R. App. P. 44.2(b). A substantial right is
affected “when the error had a substantial and injurious effect or influence in
determining a jury’s verdict.” King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App.
1997). We should not overturn a verdict if we have fair assurance that the error in
question either did not influence the jury or, if it did influence the jury, that its effect
was only slight. Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). 
          We disagree with appellant’s contention that the trial court committed harmful
error by not providing a limiting instruction because the chart bolstered the officer’s
testimony. As addressed above, the chart was a visual aid that merely recorded, in
written form, what the officer stated orally. Because the officer attested, through his
oral testimony, to all of the information on the chart, the contents of the chart were
properly admitted for all purposes before the jury. We therefore conclude that the
trial court’s error in not instructing the jury that the chart was limited to use as a
visual aid during the officer’s testimony was harmless. 
          We overrule appellant’s second point of error.
State’s Closing Argument
          In his fourth and fifth points of error, appellant contends that the trial court
erred by overruling appellant’s objections that the prosecutor asserted matters beyond
the record in closing argument to the jury. Proper jury argument is limited in scope
to the following: (1) summation of the evidence; (2) reasonable deductions from the
evidence; (3) answers to the argument of opposing counsel; and (4) pleas for law
enforcement. Cantu v. State, 939 S.W.2d 627, 633 (Tex. Crim. App. 1992); 
Hernandez v. State, 819 S.W.2d 806, 820 (Tex. Crim. App. 1991). 
NHTSA Standards
           Appellant contends that the State argued outside the record and injected new
facts that harmed appellant when the prosecutor stated that Officer Green performed
the HGN test exactly as NHTSA standards dictate.


 The State counters that its
argument was a summation of the evidence and a reasonable deduction from the
evidence. 
          During closing argument, the prosecutor stated, “Now the Defense would have
you believe that the [HGN] test was performed incorrectly. Now according to
N.H.T.S.A. standards . . . that officer did it exactly . . . .” When appellant’s trial
counsel objected that the NHTSA standards were not in evidence, the trial court
overruled the objection. 
          Officer Green had previously testified (1) that he is a certified practitioner in
the HGN test; (2) that, as part of his training, he was taught the HGN, walk-and-turn,
one-leg-stand, and Rhomberg standardized field-sobriety tests; and (3) that, the
“N.H.T.S.A. sets the standards for these tests.” The State’s argument to the jury that
the officer performed the tests according to NHTSA standards was not a reasonable
deduction from evidence that was properly before the jury. Accordingly, the trial
court erred by overruling appellant’s objection to the prosecutor’s argument.
          Rule 44.2(b), which now governs reversible error in criminal case, requires that
we disregard all error, except constitutional error, “that does not affect [appellant’s]
substantial rights.” See Tex. R. App. P. 44.2(b). Appellant does not contend that the
trial court’s error was constitutional. The Court of Criminal Appeals has identified
three relevant factors for assessing the impact of harm arising from nonconstitutional
jury-argument error under rule 44.2(b), as follows: (1) the “severity of the conduct 
(the magnitude of the prejudicial effect of the prosecutor’s remarks)”; (2) the
“measures adopted to cure the misconduct (the efficacy of any cautionary instruction
by the judge)”; and (3) the “certainty of conviction absent the misconduct (the strength
of the evidence supporting the conviction).” See Threadgill v. State, 146 S.W.3d 654,
666-67 (Tex. Crim. App. 2004) (citing Mosley v. State, 983 S.W.2d 249, 259 (Tex.
Crim. App. 1998)). 
          The first harm factor, the degree of misconduct, was mild to insignificant in this
case. Although the trial court overruled appellant’s objection to the argument, the
prosecutor proceeded in closing argument as if the objection had been granted and
switched to an entirely different topic for argument, which he continued without any
additional references to the NHTSA. Appellant did not request that the trial court
instruct the jury to disregard the comment, and the trial court therefore did not provide
instructions to disregard. Regarding the third factor, the certainty of conviction
without the prosecutor’s fleeting reference to NHTSA standards, given the evidence
of appellant’s guilt, we cannot say that the improper argument played a major part in
the jury’s finding appellant guilty. The record of the trial of this case shows that the
major issue in dispute was whether the jury should believe appellant’s version of the
facts or Officer Green’s. Because no testimony in the record established what the
NHTSA standards were or explained the significance, if any, of compliance or
noncompliance with those standards, the prosecutor’s erroneous statement could not
reasonably have affected the jury’s decision to convict appellant. 
          Accordingly, although the prosecutor went beyond the record by referring to the
officer’s compliance with NHTSA standards, we cannot say that overruling the
objection was harmful error under the record presented here. See Threadgill, 146
S.W.3d at 666.
Videotape
          Appellant also complains that the State’s attorney improperly argued matters
outside the record when he stated, “Now, Mr. Trichter gets up here with that video
tape and says, wouldn’t you like to have the original? Wouldn’t you like to have the
original? That officer gets on the stand and says this is an exact duplicate of the
original. . . . He recycles those tapes after transferring it to another tape which is
standard practice throughout the county and it has been.” The trial court sustained
appellant’s attorney’s objection, instructed the jurors to disregard the statement, and
denied appellant’s motion for mistrial. Appellant contends that the trial court erred
by not declaring a mistrial. 
          An instruction to the jury to disregard improper jury argument generally cures
the error. Wilkerson v. State, 881 S.W.2d 321, 327 (Tex. Crim. App. 1994). 
Moreover, we may presume that the jury will obey the trial court’s instructions to
disregard. Gardner v. State, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987). A trial
court errs by denying a motion for mistrial if the improper argument is extreme or
injects new and harmful facts into the record. Wilkerson, 881 S.W.2d at 327. Officer
Green testified at trial that “we recycle our tapes.” Although he does not state that this
is standard practice, by choosing to say “we,” the officer implies that all police officers
recycle their tapes. We disagree, therefore, that the State’s attorney’s argument was
extreme or injected new and harmful facts into the record. See id. Accordingly, we
conclude that the trial court’s instruction to the jury to disregard the prosecutor’s
allegedly improper jury argument cured any possible harm from the statement. See id. 
          We overrule appellant’s fifth point of error.

Conclusion
          We affirm the judgment of the trial court.
 
 
Elsa Alcala
Justice
 
Panel consists of Chief Justice Radack and Justices Keyes and Alcala.
 
Publish. Tex. R. App. P. 42(b)(2).