Hernandez-D v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-95-168-CR

     DANIEL HERNANDEZ,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the Criminal District Court No. 5
Dallas County, Texas
Trial Court # F93-60355-L
                                                                                                    

O P I N I O N
                                                                                                    

      Appellant Hernandez appeals from his conviction for conspiracy to possess cocaine, 400
grams or more, for which he was sentenced to 16 years in the Texas Department of Criminal
Justice, Institutional Division, and a $5,000 fine.
      A confidential informant told Detective Gibson, an undercover drug officer, that Appellant
and Guadalupe Manzano wanted to purchase a half-kilo of cocaine. Arrangements were made for
Gibson to bring the cocaine to JoJo's parking lot and for Appellant and Manzano to bring $9,000
cash to make the purchase. When Gibson arrived at the parking lot, Manzano was in the driver's
seat of his Blazer, Appellant was in the front passenger seat, and the confidential informant was
in the back seat. Gibson got out of his car, went over to the Blazer and asked Appellant and
Manzano if they had the $9,000. Both stated they had it. When Gibson asked to see the money,
Appellant reached behind the seat, took a sack from the floorboard and gave it to Gibson. 
Manzano told Gibson to count it if he wanted to do so.
      Gibson looked through the money, asked if it was all there, and Appellant said that it was. 
Gibson then said he would get the cocaine from his car, and Manzano followed him. Officers on
the arrest team then arrested Gibson, Manzano, Appellant and the confidential informant.
      Outside the presence of the jury, a hearing was held regarding a statement made after the
arrests had occurred. Manzano was standing handcuffed and as Gibson, also handcuffed, was
being led toward Manzano, Manzano called Gibson a "snitch." It was not in response to any
police questioning or interrogation. It was not in response to anything that Gibson had said; no
one was talking but Manzano. Neither Appellant nor Manzano had been told why they had been
placed under arrest prior to the statement. Defense counsel objected to the statement of Manzano,
a co-conspirator, as not admissible because the conspiracy had ended. The prosecutor responded
that the statement went to the state of mind and the conspirator's intentions for being at the parking
lot; and further that Manzano's statement was a res gestae statement not in response to any police
interrogation made immediately following the arrest and was in the cause and furtherance of the
conspiracy that had just occurred. The trial court admitted the testimony as to Manzano's
statement.
      The jury found Appellant guilty of conspiracy to possess cocaine and Appellant elected to
have the judge assess punishment. The judge sentenced Appellant to 16 years in prison and a
$5,000 fine. 
      Appellant appeals on one point of error: "The District Court erred in overruling Appellant's
objection to the admission of hearsay testimony and thereby deprived Appellant of a fair trial."
      Appellant contends the trial court erred when it admitted the comment of Manzano saying to
Gibson, "you snitch," asserting the comment was inadmissible hearsay.
      Rule 801(d), Texas Rules of Criminal Evidence, states "hearsay" is a statement other than one
made by the declarant while testifying at the trial or hearing offered in evidence to prove the truth
of the matter asserted.
      Gibson's testimony was as follows:
            Q.  Did either defendant say anything to you?
            A.  Yes.
            Q.  Which one?
            A.  Manzano.
            Q.  What did he say?
            A.  You snitch.
      Testimony was not offered to prove the truth of the statement, i.e., that Gibson was a snitch
and, thus, was not inadmissible hearsay. The trial court did not err in admitting the testimony.
      Appellant's point is overruled.
      And, in any event, if error, the admission of Manzano's comment before the jury was
harmless. Tex. R. App. P. 81(b)(2).
      The judgment is affirmed.
 
                                                                               FRANK G. McDONALD
                                                                               Chief Justice (Retired)

Before Justice Cummings,
      Justice Vance, and
      Chief Justice McDonald (Retired)
Affirmed
Opinion delivered and filed February 28, 1996
Do not publish     



called Traci Buhl to testify, defense counsel approached the bench
to inform the court that he anticipated the witness testifying about Evans’ abuse of their child. In
response, the State made a relevance objection and a rule 403 objection. See Tex. R. Crim. Evid.
402, 403. The court sustained the State’s objection to the abuse evidence, but Buhl never made
an offer of proof summarizing the child abuse to which Traci Buhl would have testified. 
      Later during the trial, Buhl called Andrea Wilson, a case worker for the Texas Department
of Protective and Regulatory Services (TDPRS), and she was originally questioned by defense
counsel outside the jury’s presence. Wilson described the allegations of child abuse which had
been made against Evans, i.e., Evans had placed his hand over the child’s mouth, shaken him, and
cursed at him. Also, workers at the child’s day care center reported to TDPRS that the child
became ill once after Evans dropped him off, and large knots were visible on the back of the
child’s head and leg. Wilson further explained how Evans had become very upset with her and
the Buhl family


 during TDPRS’ investigation into the possible child abuse. 
      On appeal Buhl has specifically argued that Wilson’s testimony about the abuse allegations
should have been admitted at trial. In response, the State claims that Buhl never offered Wilson’s
testimony about the abuse allegations and the trial court made no ruling excluding this evidence. 
In support of its argument that Wilson’s testimony about the abuse was not offered, the State
points out that, at the conclusion of Wilson’s testimony outside the presence of the jury, defense
counsel stated he did not “want all of this testimony in,” but he wanted to offer before the jury
testimony that: (1) Wilson went to see Robert Evans and Traci Buhl regarding their child, (2)
Wilson spoke to Evans and saw him threatening the Buhl family, as well as being verbally abusive,
and (3) in March 1995 TDPRS had a safety plan that prevented Evans from being alone and
unsupervised with his son. 
      We agree with the State that defense counsel’s statements summarizing the testimony of
Wilson he wished to present did not clearly identify the abuse allegations against Evans as being
testimony he wanted to offer. Also, we agree that there is no specific ruling from the trial judge
excluding Wilson’s testimony about the abuse evidence. See Tex. R. App. P. 33.1(a). However,
because the record is somewhat ambiguous on this point and because the trial court also excluded
testimony from Traci Buhl about the abuse, out of an abundance of caution, we will assume,
arguendo, that the abuse allegations against Evans were offered and excluded by the trial judge
in order to briefly address appellant’s points of error. 
      When there is some evidence supporting a defendant’s claim that a shooting was justified
because of self-defense, evidence about the victim’s reputation for violence or prior acts of
violence may be admitted into evidence. Gutierrez v. State, 764 S.W.2d 796, 798 (Tex. Crim.
App. 1989); Espinoza v. State, 951 S.W.2d 100, 101 (Tex. App.—Corpus Christi 1997, pet.
ref’d); Peck v. State, 923 S.W.2d 839, 842 (Tex. App.—Tyler 1996, no pet.). The victim’s
reputation and prior acts may be used to show the defendant reasonably believed force was
immediately necessary to protect himself or to demonstrate that the victim was the first aggressor. 
Id. However, the defendant must know about the victim’s prior violent acts or reputation at the
time of the shooting in order for this evidence to be relevant to his belief that force was
immediately necessary to protect himself. Id.
      In the instant case, we believe there is no evidence Evans was the first aggressor at the time
of the shooting. Buhl testified that Evans simply stared at him, raised up in his seat, and raised
his elbow. This behavior of Evans, who was later found without a gun, does not suggest Evans
was the aggressor at the time of the shooting. Espinoza, 951 S.W.2d at 101-02; Fry v. State, 915
S.W.2d 554, 561 (Tex. App.—Houston [14th Dist.] 1995, no pet.). Therefore, specific acts of
violence Evans may have committed in abusing his son would not be admissible to suggest that
Evans was the first aggressor at the time of the shooting. 
      Moreover, the trial judge did not err in excluding Wilson’s or Traci Buhl’s testimony about
the possible child abuse as it related to Buhl’s state of mind because Buhl has not identified any
evidence in the record demonstrating that he knew at the time of the shooting about the specific
acts of violence Wilson’s or Traci Buhl’s testimony would have discussed. See Peck, 923 S.W.2d
at 842 (“A defendant must have been aware of the victim’s past aggressive conduct in order for
such conduct to be admissible about the defendant’s state of mind.”). 
      Furthermore, even if Buhl did know about these acts of violence, any error which occurred
as a result of the exclusion of the evidence that Evans may have shaken or hit his son is
undoubtably harmless as Evans’ continual threats directed specifically at Kevin Buhl, which were
discussed at length during the trial, were much stronger evidence that Buhl had a reasonable belief
force was necessary to defend himself. Thus, it is evident that the exclusion of the abuse evidence
did not affect a substantial right of the appellant. See Tex. R. App. P. 44.2(b); King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997); see also Fowler v. State, No. 10-96-190-CR, slip op.
18-21 (Tex. App.—Waco 1997, pet. filed). Consequently, Buhl’s first point of error is overruled.
      Buhl argues in his second point of error that evidence Evans may have abused his son is 
admissible based on article 38.36 of the Code of Criminal Procedure which permits the defendant
to offer evidence showing the prior relationship between the parties. See Tex. Code Crim. Proc.
Ann. art. 38.36(a) (Vernon Supp. 1998). Courts have construed article 38.36 and its predecessor,
section 19.06 of the Penal Code, as rules of relevance which do not change “the rules of evidence
which apply, or the way in which they apply in any given homicide case.” Fielder v. State, 756
S.W.2d 309, 318 (Tex. Crim. App. 1988); Henderson v. State, 906 S.W.2d 589, 597 (Tex.
App.—El Paso 1995, pet. ref’d); Richardson v. State, 860 S.W.2d 214, 216 (Tex. App.—Fort
Worth 1993, no pet.); see Tex. Code Crim. Proc. Ann. 38.36(a); Act of April 17, 1991, 72nd
Leg., R.S., ch. 48, § 1, 1991 Tex. Gen. Laws 474, 474-75, repealed by Act of May 8, 1993, 73rd
Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3614 (cite to former statute Tex. Pen.
Code Ann. § 19.06). 
      On appeal, a trial judge’s determination of relevance is reviewed by the appellate court to
decide if the trial court abused its discretion. See Montgomery v. State, 810 S.W.2d 372, 391
(Tex. Crim. App. 1991) (on rehearing). In the instant case, we find no abuse of discretion in the
trial court’s holding that the abuse evidence was not relevant to show the prior relationship
between the parties. Tex. R. Crim. Evid. 401, 402. There was no evidence introduced at trial
demonstrating that Buhl’s and Evans’ fights or confrontations had anything to do with the fact that
Evans may have hit his son. Buhl testified that he and Evans began fighting after Evans cursed
at Traci Buhl, and no witness stated that Evans’ subsequent harassment of Buhl related in anyway
to Evans’ abuse of his son. Consequently, we conclude that the trial court did not abuse its
discretion in holding that the abuse evidence was not relevant to the parties’ relationship. Buhl’s
second point is overruled.
B. Evidence that Buhl feared Evans
      In his third point of error, Buhl contends that the court erred in refusing to admit testimony
that Buhl told Darren Law he was afraid of Evans because Evans often pulled guns on him. 
Although Buhl argued that this evidence was relevant to his state of mind, the trial court sustained
the State’s hearsay objection. See Tex. R. Crim. Evid. 803(3). 
      Under the rules of evidence, an out-of-court statement offered during trial to prove the truth
of the matter asserted is inadmissible unless the statement falls within one of the exceptions to the
hearsay rule. See Tex. R. Crim. Evid. 801(d), 802. The hearsay exception Buhl claims is
applicable to his statements is found in Rule 803(3) of the Rules of Criminal Evidence which
provides that statements expressing the declarant’s then existing state of mind are admissible. 
Tex. R. Crim. Evid. 803(3); McDonald v. State, 911 S.W.2d 798, 806 (Tex. App.—San Antonio
1995, pet. dism’d). 
      In order to determine whether Buhl’s statement falls within Rule 803(3)’s exception for
statements about a declarant’s then existing state of mind, we must examine other cases applying
this exception. In Peña v. State, 864 S.W.2d 147, 149 (Tex. App.—Waco 1993, no pet.), we held
that testimony showing the victim wanted to leave the defendant but felt economically trapped was
offered to show the victim’s state of mind and not to prove the truth of the victim’s statements. 
Additionally, in Williams v. State, 927 S.W.2d 752, 764-65 (Tex. App.—El Paso 1996, pet.
ref’d), the El Paso Court analyzed statements made by the victim regarding her fear that the
defendant would hurt her or take her daughter if the defendant was informed that he could not
return to the residence. The El Paso Court determined that these statements were not offered to
prove the truth of the matter asserted, but simply to reveal the victim’s state of mind. Id. at 764. 
 
      After comparing Buhl’s out-of-court statements to the testimony in Peña and Williams, we
believe a distinction can be drawn between those cases and the instant case. Peña and Williams
would support Buhl’s argument if defense counsel had simply wanted Darren Law to relate that
Buhl said he was afraid of Evans, because his fear would appear to be a statement of then existing
emotional condition. However, when defense counsel sought to have Law explain that Buhl’s fear
was caused by the numerous times Evans had pulled guns on him, the trial court was within its
discretion to hold that this testimony was offered to prove the truth of a fact the declarant
remembered or believed, i.e., Evans had pulled guns on Buhl numerous times in the past. See
King, 953 S.W.2d at 269 & n.4 (applying an abuse of discretion standard to a trial court’s
determination of hearsay); Coffin v. State, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994).
      In arguing that this statement was not offered to prove the truth of the matter asserted, Buhl
has cited Bell v. State which explains that one test for hearsay is whether “the out-of-court
statement is relevant only if the trier of fact believes that the statement was both truthful and
accurate.” 877 S.W.2d 21, 24 (Tex. App.—Dallas 1994, pet. ref’d). We believe Bell’s
expression of the hearsay test would also support the trial court’s conclusion that Buhl’s out-of-court statements do not fall within Rule 803(3). The relevance of Buhl’s statement that he was
afraid of Evans because Evans often pulled guns on him hinges upon the truthfulness of Buhl’s
assertion that Evans had in fact pulled guns on him numerous times in the past. See id. 
Consequently, we do not believe the trial court abused its discretion in sustaining the State’s
hearsay objection to Darren Law’s testimony. Buhl’s third point is overruled. 
C. Provocation Instruction 
      By his fourth point, Buhl contends the trial court erred by including a provocation instruction
in the court’s charge which impermissibly limited his claim that he acted in self-defense when
shooting McCutcheon. See Stanley v. State, 625 S.W.2d 320, 321 (Tex. Crim. App. [Panel Op.]
1981). The following provocation instruction was given by the trial court: 
So, in this case, if you find and believe from the evidence beyond a reasonable doubt
that the defendant, Kevin Lee Buhl, immediately before the difficulty, then and there did
some act with the intent on his, the defendant’s, part to produce the occasion for killing
the deceased, Dawood McCutcheon, and to bring on the difficulty with the said deceased
Dawood McCutcheon, and that such conduct on defendant’s part, if there were such, was
reasonably calculated to, and did, provoke a difficulty, and that on such account the
deceased Dawood McCutcheon attacked the defendant with deadly force, or reasonably
appeared to defendant to so attack him or to be attempting to so attack him, and that the
defendant then killed the said Dawood McCutcheon by the use of deadly force, to wit,
by shooting him with a firearm, in pursuance of his original design, if you find there was
such design, then you will find the defendant guilty of the murder of Dawood
McCutcheon. 

      A trial court may properly give an instruction on provoking the difficulty when any evidence
introduced at trial raises the issue of provocation. Matthews v. State, 708 S.W.2d 835, 838 (Tex.
Crim. App. 1986); Lee v. State, 903 S.W.2d 845, 848 (Tex. App.—Beaumont 1995, pet. ref’d). 
Then, after receiving their instructions from the court, the jurors must decide whether the
defendant acted in self-defense or if he intentionally provoked the deceased. Norwood v. State,
120 S.W.2d 806, 809 (Tex. Crim. App. 1938); Halbert v. State, 881 S.W.2d 121, 126 (Tex.
App.—Houston [1st Dist.] 1994, pet. ref’d) (stating that provocation is usually a question of fact
for the jury). A provocation instruction is warranted when the evidence suggests that: (1) the
defendant’s actions or words were intended cause the difficulty in order to have a pretext for
shooting the deceased, (2) as a result of the provocation the deceased made the first attack, and
(3) self-defense is an issue. Matthews, 708 S.W.2d at 837-38. 
      In the instant case, while the evidence of provocation is not particularly strong, it is
nevertheless sufficient to raise this issue such that the trial court did not err in including a
provocation instruction in the jury charge. The jurors could have concluded from the evidence
that Buhl acted with the intent to provoke McCutcheon when, after running up to the car and
shooting Evans six times, he failed to retreat but made eye contact with McCutcheon who was
sitting in the backseat. Buhl explained that, after making eye contact with McCutcheon,
McCutcheon then began reaching with one hand to grab something on the floor of the car. The
jurors could also consider that Buhl may have wanted to provoke McCutcheon in order to kill him
because McCutcheon had been with Evans when Evans harassed him by chasing his car.
      Next, Buhl claimed that McCutcheon appeared to be about to attack him when he fired his
weapon at McCutcheon. Also, one of the defense witnesses, Roderick Watson, stated that, after
Buhl shot Evans, Buhl ceased shooting, but then gunshots were fired from inside the vehicle which
caused Buhl to begin shooting into the back seat of the car. From Watson’s account of the
shooting, the jurors could have believed McCutcheon did actually make the first attack on Buhl. 
Additionally, we believe that, based on Buhl’s account of the shooting, self-defense is clearly at
issue. Buhl’s fourth point of error is therefore overruled because the trial court did not err in
giving the jury a provocation instruction. 
D. Batson Challenge
      Following voir dire, the State used peremptory strikes against three of the four black jurors
on the panel. In response to Buhl’s Batson


 objection, the State offered race-neutral explanations
for each of the three strikes.


 The trial court then overruled Buhl’s Batson objection, concluding
that Buhl had not proved the State’s peremptory strikes were the result of “purposeful racial
discrimination.” Purkett v. Elem, 514 U.S. 765, —, 115 S.Ct. 1769, 1770-71 (1995). 
      On appeal a trial court’s ruling on a Batson objection will not be reversed unless clearly
erroneous. See Stiles v. State, 927 S.W.2d 723, 727 (Tex. App.—Waco 1996, no pet.); see also
Mayr v. Lott, 943 S.W.2d 553, 556 (Tex. App.—Waco 1997, no writ). Buhl argues that the
State’s peremptory strikes must have been racially motivated because the State failed to strike
other members of the venire who shared similar characteristics with the black persons struck by
the State. Specifically, Buhl points out that other venire members had relatives with criminal
convictions, but these individuals were not struck like the black venire members Goff and Owens. 
      After viewing the evidence from the Batson hearing in the light most favorable to the trial
court’s ruling, we conclude that the trial court’s decision to overrule Buhl’s Batson objection was
not clearly erroneous. See Stiles, 927 S.W.2d at 727. Despite Buhl’s assertion that race was the
only distinguishing factor among the jurors struck versus those left on the panel, we believe the
prosecutor’s race-neutral explanations support the trial court’s ruling. The State’s dismissal of
Owens, which Buhl contends is the most questionable strike, is supported by the State’s reasoning
that the father of Owens’ children was currently charged with capital murder just like Kevin Buhl. 
None of the venire members who were not struck had relatives charged with or convicted of
capital murder. Also, Goff’s husband had been personally prosecuted by the State’s attorney for
several burglaries. There was no evidence any of the other venire members had family members
personally prosecuted by the attorney representing the State. The State’s strike of Jones was
justified because Jones worked with Buhl’s sister and said being on the jury would cause a
problem for him. Buhl’s fifth point is overruled. 
E. Constitutional Challenges
      In his sixth point of error, Buhl asserts that, when the defendant has a legitimate voluntary
manslaughter defense, the imposition of an automatic life sentence without providing an
opportunity for the defendant to present evidence suggesting he was acting under the influence of
sudden passion constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth
Amendments of the United States Constitution. See U.S. Const. amend. VIII, XIV. Similarly,
Buhl’s seventh point of error claims that a defendant’s right to due process is violated when an
automatic life sentence is imposed after a defendant is found guilty of capital murder because
Texas’ capital murder statute prevents a defendant from raising the issue of sudden passion. See
U.S. Const. amend. XIV.
      Pursuant to section 19.02(d) of the Penal Code, if a defendant is convicted of the offense of
murder, he may present evidence during the penalty phase of his trial showing that he acted “under
the immediate influence of sudden passion arising from an adequate cause” in order to lessen the
severity of the offense from a first degree felony to a felony of the second degree. See Tex. Pen.
Code Ann. § 19.02(d) (Vernon 1994). However, the legislature has determined that when a
defendant is convicted of capital murder the defendant is subject to either the death penalty or a
life sentence. See Tex. Pen. Code Ann. § 12.31(a) (Vernon 1994). If the State chooses not to
seek a sentence of death, there is no penalty phase of the trial during which the defendant may
present evidence of sudden passion because the trial judge is authorized to automatically impose
a life sentence on the defendant as punishment for committing capital murder. Id.; Tex. Code
Crim. Proc. Ann. art. 37.071, § 1; see Prater v. State, 903 S.W.2d 57, 60 (Tex. App.—Fort
Worth 1995, no pet.). 
      We do not agree with Buhl’s contention that his right to due process was violated because he
was unable to present evidence that he acted as a result of sudden passion. The Legislature of the
State of Texas has the authority to set appropriate sentences for different offenses, and it has
determined that the only available punishments for capital murder are life imprisonment or a death
sentence. See Tex. Pen. Code Ann. § 12.31(a); Matchett v. State, 941 S.W.2d 922, 932 (Tex.
Crim. App. 1996), cert. denied, — U.S. —, 117 S.Ct. 2487 (1997) (stating that the legislature has
the power to define an offense and set the appropriate penalty); Laird v. State, 933 S.W.2d 707,
715 (Tex. App.—Houston [14th Dist.] 1996, pet. ref’d) (“The legislature may alter or abolish the
procedure whereby the jury assesses punishment, within the bounds of due process . . . .”); Jones
v. State, 902 S.W.2d 102, 105-06 (Tex. App.—Houston [1st Dist] 1995, pet. ref’d). Therefore,
when the State declines to seek a sentence of death, there is no need for a penalty phase during
which the defendant may present evidence of sudden passion to mitigate his punishment because
the defendant is receiving the minimum sentence available for his crime. Prater, 903 S.W.2d at
60. Thus, we agree with the other appellate courts which have held that a defendant’s
constitutional right to due process is not violated by Texas’ capital murder sentencing procedure
when the death penalty is waived. See Laird, 933 S.W.2d at 715; Prater, 903 S.W.2d at 60; see
generally Bridgewater v. State, 905 S.W.2d 349, 355 (Tex. App.—Fort Worth 1995, no pet.);
Speer v. State, 890 S.W.2d 87, 92-93 (Tex. App.—Houston [1st Dist.] 1994, no pet.).
      We are likewise convinced that a mandatory life sentence does not constitute a “cruel and
unusual” punishment within the meaning of the Eighth Amendment. U.S. Const. amend. VIII. 
This conclusion is supported by the United States Supreme Court’s decision in Harmelin v.
Michigan, 501 U.S. 957, 111 S.Ct. 2680 (1991). In Harmelin the Court held that a mandatory
life sentence imposed on a defendant for possessing 672 grams of cocaine did not violate the
Eighth Amendment. Id. at 501 U.S. at 961, 111 S.Ct. at 2684. The Court stated that a sentence
does not become cruel or unusual just because it is mandatory. Id. at 501 U.S. at 995, 111 S.Ct.
at 2701-02. Thus, the Court re-affirmed that the Constitution does not require individualized
sentencing for the jury to consider mitigating evidence when the death penalty is not at issue. Id. 
Furthermore, other Texas appellate courts have agreed with our decision that the imposition of an
automatic life sentence on a capital murder defendant is not cruel and unusual punishment. See
Laird, 933 S.W.2d at 714; Prater, 903 S.W.2d at 60; see generally Bridgewater, 905 S.W.2d at
355; Speer, 890 S.W.2d at 92-93. Buhl’s sixth and seventh points of error are overruled.
      The judgment of the trial court is affirmed.
 
 BOBBY L. CUMMINGS
                                                                               Justice

Before Chief Justice Davis,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed January 21, 1998
Publish