**Opinion filed October 13, 2016**



## In The

# Eleventh Court of Appeals

_____

## No. 11-14-00274-CR

_____

## MICHAEL LOWERY, Appellant
## V.
## THE STATE OF TEXAS, Appellee

**On Appeal from the 220th District Court**

**Comanche County, Texas**

**Trial Court Cause No.  CR03693**

### M E M O R A N D U M   O P I N I O N

The jury convicted Michael Lowery of the murder of his wife, Amber Lowery, and assessed his punishment at confinement for life in the Institutional Division of the Texas Department of Criminal Justice.  In three issues on appeal, Appellant contends (1) that the trial court erred when it admitted testimony from the decedent's brother about a statement made to him by the decedent, (2) that the trial court erred by permitting Appellant's brother to read from a document containing Facebook messages from the decedent, and (3) that the trial court erred when it admitted testimony of Appellant's brother about the contents of the Facebook messages from the decedent.  We affirm.

*Background Facts*

On July 23, 2013, Appellant and his wife, Amber Lowery, were living on a ranch in Comanche County about six miles east of Rising Star. Amber and Appellant had a rocky relationship, described as having many ups and downs. Amber had previously filed for divorce on two occasions. Appellant was known to have an explosive temper. He had previously broken Amber's nose and had attended two anger management courses prior to the events of July 23.

The evidence offered at trial established that both Amber and Appellant had discussed their marital difficulties with others. In September 2009, Amber communicated with Appellant's brother, David Lowery,[1] over the telephone and through Facebook messages. She told him that she was considering divorce and described her relationship with Appellant by stating, "Life has been hell." During 2008 and 2009, Appellant was working in Africa flying helicopters. On one occasion, Appellant's coworker, Michael Pandol, overheard Appellant having a heated telephone conversation with someone. Appellant was screaming, cursing, and causing a disturbance amongst the other pilots. Pandol later discussed Appellant's marital problems with him. Appellant told Pandol that he would "kill that b---h and bury her where nobody will find her."

In 2013, Appellant was working as a helicopter pilot in Sabine Pass. His job required him to alternate spending two weeks in Sabine Pass and then two weeks at home. On July 23, Appellant was scheduled to drive back to Sabine Pass to begin a two-week stint for his job. Early that morning, Appellant's friend, Andres Mendoza, had been at the Lowerys' ranch. Mendoza testified that, while he was there, he felt a tension between Appellant and Amber. Appellant left home that afternoon to return to work in Sabine Pass.

---

[1]All references in this opinion to "Lowery" are to David Lowery.

At 3:08 p.m., during Appellant's drive to Sabine Pass, he began receiving text messages from Amber. Amber was upset because she believed that Appellant had deleted photographs of her deceased parents and had locked her out of the safe. The text messages between Amber and Appellant became increasingly heated, and Amber eventually told Appellant that she had made an appointment with a divorce lawyer. Appellant responded by stating, "Sending paperwork is the worst mistake you can make." It was later discovered that this text message was deleted from Appellant's phone before it was turned over to law enforcement.

Meanwhile, Amber had been in communication with her brother, Ryan Christensen. Amber had made plans to meet Christensen the next morning, July 24, at their deceased parents' home to go through some of their parents' things. Amber called Christensen at 7:19 p.m. and spoke to him for twenty-two minutes. Christensen testified that Amber told him that "[s]he was angry, she was upset and she was scared." She further told him that "if anything were to happen to me[,] . . . Mike had done it." The last time anyone received any communication from Amber was 9:36 p.m.

Sometime around 6:18 p.m., Appellant decided to turn around and head back to his home. Appellant arrived home at around 9:45 p.m. Later that night, Mendoza spoke to Appellant on the phone. Appellant was breathing hard and repeating, "Oh, man. Oh, man." Mendoza asked Appellant if he had hit Amber. Appellant replied, "[I]t's too late." Mendoza asked Appellant to tell him what had happened. Appellant asked Mendoza, "[A]re you my brother?" Mendoza replied, "[Y]eah, but don't tell me anything my heart can't handle." Appellant's demeanor immediately changed, and he told Mendoza, "[O]kay. No, we got in a fight. She took off."

The next morning, July 24, several witnesses saw Amber's vehicle. Appellant's neighbor, Shae Southall, saw the vehicle on the ranch property at 7:00 a.m. A local shopkeeper and two of the store's regular customers saw the

vehicle parked at an abandoned laundromat in Rising Star at around 7:30 a.m. That afternoon, another witness saw a man matching Appellant's description walking down the road near Amber's vehicle carrying an infant. She offered the man a ride, which he accepted, and drove him and the infant to the ranch where Appellant lived.

Around mid-morning of the 24th, Appellant dropped his five-year-old son off at a friend's house, telling the friend that Amber had left for Bluff Dale earlier that morning. However, Amber failed to appear at her parents' home in Bluff Dale to help her brother, Christensen, go through their parents' belongings. Concerned about his sister, Christensen called the police and asked them to perform a welfare check.

Later that evening, law enforcement officers visited Appellant at his home. Appellant told the officers that he and Amber had gotten into a fight the night before and that Amber had driven off. Over the next few days, investigators searched for Amber. They found her car at the abandoned laundromat in Rising Star. A helicopter flyover of the ranch revealed a burn pile on the property. When investigators subsequently searched the property, they noticed that the burn pile had been cleared and leveled off. They also noticed that a piece of heavy equipment located on the property had recently been used. On one particular piece of equipment, the lights had been left on and the battery had died, indicating it had last been used at night. Investigators eventually found human remains in the burn pile. A DNA analyst testified that it was 87 million times more likely that the remains belonged to Amber than from someone else.

Appellant testified in his own defense. He denied that the conversation with Pandol ever happened. He stated that Pandol, Christensen, and Lowery held grudges against him. Appellant had spent the two weeks prior to July 23 at home working around the ranch. This work included burning and clearing the burn pile, which he testified was done on the Friday before Amber's disappearance.

4

According to Appellant, Amber had a history of suffering from depression. She suffered from postpartum depression after the birth of their second child, and the recent loss of her parents had made her depression worse. She had threatened suicide in the past. Appellant became concerned about Amber when she began sending heated text messages to him on his way to work. Appellant had a "gut feeling" that Amber needed him, so he turned around and drove back home. When he arrived home, Amber was sitting outside. He attempted to talk to her but she refused. Appellant heard his infant son crying, so he went inside to check on him. While inside, he heard Amber drive away. Appellant testified that this was the last he ever heard from her. Appellant testified that he still has hope that she will be found alive and that the human remains found on the property do not belong to her. Appellant denied deleting any of his text messages. He also denied getting a ride from anyone on the afternoon of July 24.

*Analysis*

In his first issue, Appellant contends that the trial court erred by admitting Amber's statement to Christensen that, "if anything were to happen to me[,] . . . Mike had done it." Appellant asserts that the trial court abused its discretion by admitting this statement because the State offered it to prove the truth of the matter asserted in violation of Rule 801 of the Texas Rules of Evidence. We review a trial court's ruling on admissibility of evidence for an abuse of discretion. *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). We will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001).

The ruling that Appellant challenges in his first issue occurred after defense counsel cross-examined Christensen. Appellant's trial counsel concluded her cross-examination by asking Christensen questions that pointed out that Amber had been missing for less than twenty-four hours when he called law enforcement and that

Christensen kept insisting that Amber would be found on the ranch. Prior to beginning his redirect examination, the prosecutor approached the bench and requested permission from the trial court to offer Amber's statement to Christensen that led Christensen to become concerned for Amber's safety. The trial court granted the prosecutor's request, stating, "I believe the door is open." During redirect examination, the prosecutor asked Christensen, "Now I do want to ask you what did Amber tell you that made you so concerned something specific had happened to her?" In response, Christensen stated that Amber had told him that, "if anything were to happen to me[,] . . . Mike had done it."

Appellant contends that this statement was offered for its truth (that if anything happened to Amber, Appellant had done it to her) and "for no other reason." He additionally contends that "[t]here is no 'open door' exception to the hearsay rule." We note at the outset that Appellant is correct in his assertion that his cross-examination could not have "opened the door" to "invite" inadmissible hearsay testimony. *See Kipp v. State*, 876 S.W.2d 330, 337 (Tex. Crim. App. 1994) ("'Opening the door' or 'inviting' testimony that would otherwise pertain to an inadmissible subject matter does not mean that such testimony is necessarily 'invited' into evidence in *any* form, including hearsay."); *Kinsey v. State*, No. 11-12-00102-CR, 2014 WL 2459690, at *11 (Tex. App.—Eastland May 22, 2014, no pet.) (mem. op., not designated for publication). However, we disagree that the trial court relied on this principle to admit inadmissible hearsay. As we noted in *Kinsey*, the concept of opening the door is an aspect of relevancy that can make otherwise nonrelevant evidence relevant. 2014 WL 2459690, at *11. It appears that the prosecutor in this case made the argument that defense counsel opened the door to make evidence of Christensen's purpose and motivation relevant.

Hearsay is a statement, other than one made by the declarant while testifying at trial, that is offered to prove the truth of the matter asserted. TEX. R. EVID. 801(d).

A statement not offered to prove the truth of the matter asserted is not hearsay. *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995); *see Guidry v. State*, 9 S.W.3d 133, 152 (Tex. Crim. App. 1999). For example, if a statement is offered to show the effect on the listener, rather than for the truth of the matter asserted, then the statement is not hearsay. *See Young v. State*, 10 S.W.3d 705, 712 (Tex. App.—Texarkana 1999, pet. ref'd) (concluding complainant's out-of-court statements "were admissible as evidence of their effect on the listener, rather than of the truth of the matter asserted"); *see generally In re Bexar Cty. Criminal Dist. Attorney's Office*, 224 S.W.3d 182, 189 (Tex. 2007) (orig. proceeding) (noting out-of-court statements are not hearsay "if offered for their effect on the listener rather than for the truth of the matter asserted").

In this case, the State offered Amber's statement to Christensen to dispel the suspicions cast on him by Appellant and to explain why Christensen believed that Amber would be found at the ranch. Amber's statement to Christensen provided an explanation for why he believed it was necessary to report Amber missing and why he repeatedly directed law enforcement to the ranch where she and Appellant lived. We hold that the trial court did not abuse its discretion by admitting the statement because it could have reasonably concluded that it was offered for its effect on the listener rather than to prove the truth of the matter asserted. We overrule Appellant's first issue.

In Appellant's second issue, he contends that the trial court erred by permitting Lowery to read from an unauthenticated document containing Facebook messages between Amber and Lowery. He contends that the admission of the statements violated Rule 901 of the Texas Rules of Evidence. In response, the State contends (1) that Appellant failed to preserve the issue of authentication at trial and (2) that there is enough evidence in the record to support a finding that the Facebook messages were from Amber. We conclude that Appellant properly preserved error.

However, we also conclude that the Facebook messages were properly authenticated by Lowery.

In order to preserve a complaint for appellate review, a party must present the trial court with a timely request, objection, or motion stating the specific grounds for the desired ruling, if those grounds are not apparent from the context, and must obtain a ruling. TEX. R. APP. P. 33.1(a); *Moore v. State*, 371 S.W.3d 221, 225 (Tex. Crim. App. 2012); *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009). Preservation is a "systemic requirement" on appeal. *Ford*, 305 S.W.3d at 532. In order to preserve an issue for appeal, no specific words are necessary, so long as the parties and the trial court understand from the context what the objection is. *Clark v. State*, 365 S.W.3d 333, 337 (Tex. Crim. App. 2012); *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992).

During its case-in-chief, the State called Lowery as a witness. He testified that, in September 2009, he reached out to Amber through Facebook. Prior to trial, Lowery copied and pasted the Facebook messages between Amber and himself into a Word document. When the State began to ask Lowery questions about the content of the Facebook messages, Appellant objected, stating, "I object to hearsay. . . . We are not actually seeing the Facebook records. This is something he's recorded, unreliable. I object to it." Appellant's counsel then objected further, stating, "We have no documentation or foundation whatsoever this information is reliable . . . ." The State responded by stating that Appellant's objections went to weight and credibility and that it was "not offering the document . . . just asking the witness to refer to the document so he can give specifics on this." The trial court concluded that the objection went to weight, rather than admissibility, and allowed Lowery to testify as to the content of the Facebook messages.

The State contends that Appellant's trial objections failed to preserve error as to the authenticity of the Facebook messages because they were related only to

hearsay and reliability. The State points out that Appellant never referred to Rule 901 and never used the word "authenticity." However, in order to preserve error, specific references are needed only if it is not clear from the context what the basis for the trial objection is. *Clark*, 365 S.W.3d at 337; *Lankston*, 827 S.W.2d at 909; *Williams v. State*, 916 S.W.2d 53, 55 (Tex. App.—Houston [1st Dist.] 1996, no pet.). In *Williams*, the trial court admitted into evidence a confession letter that was purportedly written by the defendant. *Williams*, 916 S.W.2d at 55. At trial, the defendant objected, stating that no proper predicate had been shown. *Id.* On appeal, the defendant argued that the letter was not properly authenticated. *Id.* The appeals court held that the trial objection based on lack of predicate was sufficient to put the State and the trial court on notice that the defendant was objecting under Rule 901. *Id.*

Here, it is clear from the record that Appellant's trial objections were in regard to whether the Facebook messages were "what the proponent claims [they are]," as required by Rule 901. TEX. R. EVID. 901(a). Appellant's counsel's statements— that "[w]e are not actually seeing the Facebook records. This is something he's recorded" and that "[w]e have no documentation or foundation whatsoever"—are essentially objections to the authenticity of the Facebook messages. Appellant was not required to specifically refer to Rule 901 or use the words "authentic" or "authenticity" in order to put the State and the trial court on notice that he was objecting to the authenticity of the Word document that Lowery created. The fact that the State clarified that it was "not offering the document" further supports the conclusion that it was aware that Appellant's objection was to the authenticity of the document, rather than simply to the potential hearsay statements contained within them or to the reliability of the witness's testimony.

The State contends that the evidence supported a determination that the Facebook messages were from Amber. We agree. "Evidence has no relevance if it

9

is not authentically what its proponent claims it to be." *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901(a). In a jury trial, it is the jury's role ultimately to determine whether an item of evidence is indeed what its proponent claims; the trial court need only make the preliminary determination that the proponent of the item has supplied facts sufficient to support a reasonable jury determination that the proffered evidence is authentic. *Butler v. State*, 459 S.W.3d 595, 600 (Tex. Crim. App. 2015) (citing *Tienda*, 358 S.W.3d at 638). Under Rule 104(s) of the Texas Rules of Evidence, whether to admit evidence at trial is a preliminary question to be decided by the trial court. TEX. R. EVID. 104(a); *Tienda*, 358 S.W.3d at 638. "The preliminary question for the trial court to decide is simply whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has proffered is authentic." *Tienda*, 358 S.W.3d at 638.

During direct examination, Lowery testified about a conversation that he had with Amber via Facebook messages. He testified that he reached out to Amber on Facebook when he heard that she was seeking a divorce from Appellant. When asked, "Did you actually document your conversation with Amber Lowery by recording what she had sent you on Facebook?" Lowery replied, "I copied and pasted our Facebook, three days of messages, into a Word document . . . ." He also testified that he had an "hour and a half phone conservation" with Amber during this time period. We conclude that this testimony supplied facts that were sufficient to support a reasonable jury determination that the statements were in fact communications that he had received from his sister-in-law after he initiated contact with her on Facebook to discuss her marriage to his brother. Accordingly, the trial

court did not abuse its discretion in overruling Appellant's authenticity objection. We overrule Appellant's second issue.

In Appellant's third issue, he contends that the trial court erred when it admitted, over Appellant's hearsay objection, Amber's statement to Lowery that "[l]ife has been hell." The State contends that this statement was admissible under Rule 803(3) of the Texas Rules of Evidence. We agree.

Rule 803(3) provides that "[a] statement of the declarant's then-existing state of mind" is excluded from hearsay. TEX. R. EVID. 803(3). Statements that describe the declarant's unhappiness in his or her relationship have been held to fit within the state-of-mind exception. *See Fain v. State*, 986 S.W.2d 666, 679 (Tex. App.—Austin 1998, pet. ref'd); *Peña v. State*, 864 S.W.2d 147, 149–50 (Tex. App.—Waco 1993, no pet.); *Whitmire v. State*, 789 S.W.2d 366, 371 (Tex. App.—Beaumont 1990 pet. ref'd). Amber's statement to Lowery that "[l]ife has been hell" was a statement describing her feelings about her relationship with Appellant and fits within Rule 803(3). Accordingly, the trial court did not abuse its discretion in admitting this statement. We overrule Appellant's third issue.

*This Court's Ruling*

We affirm the judgment of the trial court.

JOHN M. BAILEY
JUSTICE

October 13, 2016

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.